In the United States District Court
for the District of Delaware

\* 06-151-KAJ

Charles F. Cardone
Show
      Plaintiff,

Preliminary
      v

Correctional Medical Services
     Defendants

And

**FILED**

**JUN 20 2006**

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RD scanned

Order to

Cause For A

Injunction

A Temporary
Restraining
Order
Civil Action No. 06-151 KAJ

    Upon the complaint, the supporting affidavit
of Plaintiff, and the memorandum of law submit-
ted herewith, it is:

    ORDERED that the defendants Correctional
Medical Services show cause in room _____
of the United States Courthouse, 844 N. King St.,
Wilmington, Delaware 19801 on the _____ day of —
_____, 20 ___ at ___ o'clock, why a prelim-
inary injunction should not issue pursuant to
Rule 65(a) of the Federal Rules of Civil Procedure —
enjoining the defendants, their successors in office,
agents and employees and all other persons acting in
concert and participation with them, from starting
and starting dispersing of my numerous medications at
times, stopping and starting for days at a time and

2

sometimes weeks at a time. One of the reasons CMS does the aforementioned is to require me to submit sick call requests forms and medical grievances which, in turn, CMS then charges me monies and then deducting from my prison account those monies to "restart" dispensing my chronic care medications. On top of the recent 30 million dollar plus, no bid contract for medical services to Delaware's prison population, CMS actually charges (on a cost plus basis) each prisoner monies to provide improper medical care. See ACLU's National Prison Project Journal, Summer/Fall 2004. ——

    It is also imperative that CMS require their workers at DCC to give their names when asked. Every time I ask an CMS employee who talks to me while they are outside my cell, they refuse to co-operate. When I seek to utilize an administrative grievance against a particular CMS employee who refuses my enquirys, that grievance comes back rejected and/or turned down for some obscure reason.

    It is furthered ORDERED that the order to show cause, and all other pages attached to this application, be served on the aforesaid Plaintiff by _____ Date.

Judge's Signature

Dated: _____
United States District Judge

In the United States District Court
for the District of Delaware

1

Charles F. Cardone
    Plaintiff,
      v.
of


Correctional Medical Services
    Defendants

Declaration

of

Charles F. Cardone

Civil Action No. 06-151 KAJ


Charles F. Cardone, plaintiff in the above

Civil Action No. 06-151-KAJ, hereby

declares that the enclosed Exhibits, A —

B, C, and D, are to used to support

my request for a Temporary Restraining

Order i.E., to provide me with proper

medical care.— I declare under penalty of

perjury that the foregoing is true and correct.

Executed at DCC prison in Smyrna, Delaware

on   <u>June 14, 2006</u>
       DATE

<u>Charles F. Cardone</u>   SBT #098159
    Signature



DCC **Delaware Correctional Center**
Smyrna Landing Road
**SMYRNA DE, 19977**
Phone No. 302-653-9261

Date: 04/03/2006

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name** : CARDONE, CHARLES F | **SBI#** : 00098159 | **Institution** : DCC |
| **Grievance #** : 16658 | **Grievance Date** : 08/18/2005 | **Category** : Individual |
| **Status** : Withdrawn | **Resolution Status** : | **Resol. Date** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 08/18/2005 | **Incident Time** : |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg 18, Lower, Tier C, Cell 12, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** I/M Cardone states that he suffers from Chronic Lower Back bone spurs, Compressed Discs, and Degenerative Arthritis. I/M claims that being housed in the SHU has caused the pain to worsen. I/M also states that withholding his medication constitutes "Cruel and Unusual Punishment" and that DCC and its agent medical company are liable.

**Remedy Requested** : Be issued pain medication.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : YES | Date Received by Medical Unit : 09/01/2005 |
| Investigation Sent : 09/01/2005 | Investigation Sent To : Dunn, Lee Anne |
| Grievance Amount : | |

Exhibit A

DCC  **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 04/03/2006

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 16658 | Grievance Date : 08/18/2005 | Category : Individual |
| Status : Withdrawn | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 08/18/2005 | Incident Time : |
| IGC : Merson, Lise M | Housing Location :Bldg 18, Lower, Tier C, Cell 12, Single | |
| INFORMAL RESOLUTION | | |

Investigator Name    : Dunn, Lee Anne                    Date of Report  09/01/2005

Investigation Report : level II requested

Reason for Referring:

Exhibit A

Offender's Signature:_____

Date                        :_____

Witness (Officer)      :_____

Date: 04/03/2006

**DCC  Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 16658 | Grievance Date : 08/18/2005 | Category : Individual |
| Status : Withdrawn | Resolution Status : | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 08/18/2005 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg 18, Lower, Tier C, Cell 12, Single | |

### IGC

Medical Provider:                            Date Assigned

Comments:

*Exhibit A*

[x] Forward to MGC                [ ] Warden Notified

[ ] Forward to RGC               Date Forwarded to RGC/MGC : 01/23/2006

[x] Offender Signature Captured   Date Offender Signed    :

DCC  Delaware Correctional Center                          Date: 04/03/2006
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| **Offender Name** : CARDONE, CHARLES F | **SBI#** : 00098159 | **Institution** : DCC |
| **Grievance #** : 16658 | **Grievance Date** : 08/18/2005 | **Category** : Individual |
| **Status** : Withdrawn | **Resolution Status** : | **Inmate Status** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 08/18/2005 | **Incident Time** : |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg 18, Lower, Tier C, Cell 12, Single | |

| APPEAL REQUEST |
|---|

Appeal due 3/31/2006. No appeal returned as of 4/3/2006. — *these dates correspond with the dates of Grievance # 16799- I was in the Hole and was not permitted pen + paper to appeal non existent paper work/decisions* cfc

| REMEDY REQUEST |
|---|

6-11-06

Exhibit A

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 07/21/2005

Shu 19 BL-8

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 15152 | Grievance Date : 07/02/2005 | Category : Individual |
| Status : Unresolved | Resolution Status : | Resol. Date : |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/02/2005 | Incident Time : |
| IGC : Vargas, Rosalie | Housing Location : Bldg 18, Upper, Tier D, Cell 7, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate states not getting meds and bottom bunk memo is being ignored. On top bunk afraid to fall asleep. In severe distress.

**Remedy Requested** : Give m e m y meds p rescibed b y D r Burns o f S CI C all me t o D CC M edical so w e c an g et this cleared up.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : YES | Date Received by Medical Unit : 07/08/2005 |
| Investigation Sent : 07/08/2005 | Investigation Sent To : Breton, Monique |
| Grievance Amount : | |

(15)
3-8-06

Exhibit B

DCC - Delaware Correctional Center    Date: 07/21/2005
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 15152 | Grievance Date : 07/02/2005 | Category : Individual |
| Status : Unresolved | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/02/2005 | Incident Time : |
| IGC : Vargas, Rosalie | Housing Location :Bldg 18, Upper, Tier D, Cell 7, Single | |

### INFORMAL RESOLUTION

Investigator Name : Breton, Monique          Date of Report  07/08/2005

Investigation Report :

Reason for Referring:

Investigator Name : Dunn, Lee Anne          Date of Report  07/21/2005

Investigation Report :

Reason for Referring:

*this Grievance is unresolved to this date,*
*6-14-06*
*cfc*

*Exhibit B*

*\* level II*
*- memo written + faxed 2 times to security*

Offender's Signature: _____

Date : 10/13/05

Witness (Officer) : Smeggett, RN

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

*(handwritten: (13) 3-8-06    09/05/2005)*

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Offender Name : CARDONE, CHARLES F | | SBI# : 00098159 | | Institution : DCC | |
| Grievance # : 16799 | | Grievance Date : 08/26/2005 | | Category : Individual | |
| Status : Unresolved | | Resolution Status : | | Resol. Date : | |
| Grievance Type: Health Issue (Medical) | | Incident Date : 08/26/2005 | | Incident Time : | |
| IGC : McCreanor, Michael | | Housing Location : Bldg 19, Lower, Tier B, Cell 8, Single | | | |

## OFFENDER GRIEVANCE DETAILS

Description of Complaint: I/M Cardone states that he informed Dr. Rogers he had herpes and that he has shown Dr. Rogers evidence of his breaking out on his genitals top of his head, and the back of his neck. He requested 1 of the 3 new medications now available according to medical magazines. I/M alleges that Dr. Rogers responded "When you have an outbreak, come and see me".

Remedy Requested    :   I/M wishes a PCR test and a presription for anti-herpes medication.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : YES | Date Received by Medical Unit : 09/05/2005 |
| Investigation Sent : 09/05/2005 | Investigation Sent To : Dunn, Lee Anne |
| Grievance Amount : | |

*To this date, June 11, 2006, CMS has not addressed my grievances re proper medical care.*

*cfc*

*Exhibit C*

**DCC** Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 04/03/2006

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 16799 | Grievance Date : 08/26/2005 | Category : Individual |
| Status : Withdrawn | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 08/26/2005 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg 18, Lower, Tier C, Cell 12, Single | |

### MGC

Date Received : 02/02/2006          Date of Recommendation: 04/03/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Deny |
| Staff | | Weigner, Kimberly | Deny |
| Staff | | Branch, Adriene | Deny |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

Uphold : 0          Deny : 3          Abstain : 1

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing held 3/24/2006.
Deny: Put in sick call to be re-evaluated for this problem.

Appeal due 3/31/2006

*I was taken out of the Hole on March 24, 06 to attend this hearing. As evidenced above, the Date of Recommendation was 4/03/2006 (DENIED)... How, then, could I appeal by 3/31/2006 if the denial was posted 4 days later? Furthermore, since May 21, 05, the date I was transferred from SCI to DCC, my right of appeal of administrative decisions is non existent. CFC 6-11-06*

*Exhibit C*

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : CARDONE, CHARLES F | SBI# : 00098159 | Institution : DCC |
| Grievance # : 16799 | Grievance Date : 08/26/2005 | Category : Individual |
| Status : Unresolved | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 08/26/2005 | Incident Time : |
| IGC : McCreanor, Michael | Housing Location :Bldg 19, Lower, Tier B, Cell 8, Single | |

| INFORMAL RESOLUTION | |
|---|---|
| Investigator Name : Dunn, Lee Anne | Date of Report 09/05/2005 |
| Investigation Report : | |
| Reason for Referring: | |

Exhibit C

hevel II requested

Offender's Signature: *C F Cardone*

Date : 9/19/05

Witness (Officer) : *Smeggett, RN*

June 14, 2006

This Memorandum of Law submitted, herewith, by Charles F. Cardone, plaintiff in Civil Action NO. 06-151-KAJ, is to be used in support of plaintiff's request to the Court to issue a preliminary injunction and a Temporary Restraining Order on the defendants, Correctional Medical Services, to provide proper medical care to plaintiff. Plaintiff submits several cases, below, for the Court to consider:

Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003).

Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Woodward v. Correctional Medical Services, 368 F.3d 917 (7th Cir. 2004)

ACLU National Prison Project Journal, Vol. 18, No. 2, Winter/Spring 2005. ISSN 1076-769X Pages 5, 6 ... see additional sheet: Memorandum of Law

Date: June 14, 2006        Charles F. Cardone
                           SBI # 098159
                           Pro se

Additional Sheet for Memorandum of Law submitted, herewith, by Charles F. Cardone, plaintiff in Civil Action No. 06-151-KAJ for the Court to consider:

* _Estelle v. Gamble_, 429 U.S. 97, 104 (1976)...

* _Brock v. Wright_, 315 F. 3d 158, 162 (2d Cir. 2003)...

* _Clement v. Gomez_, 298 F. 3d 898, 904 (9th Cir. 2002)...

* _Woodward v. Correctional Medical Services_, 368 F. 3d 917 (7th Cir. 04)

* the above cases are taken from:

Litigating Prison and Jail Conditions
David C. Fathi
ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington DC 20005
dfathi@npp-aclu.org

Date: June 14, 2006                    Charles F. Cardone
                                       SBI # 098159
                                       Pro se
                                       Plaintiff



*Exhibit D*
*06-151-KAJ*

http://www.delawareonline.com/apps/pbcs.dll/article?AID=/20060309/NEWS/603090382

# Federal probe to address prison failures

Department of Justice to look into every aspect of corrections, from operations to inmate care

BY LEE WILLIAMS, ESTEBAN PARRA AND PATRICK JACKSON
THE NEWS JOURNAL
03/09/2006



Buy this photo

THE NEWS JOURNAL/FRED COMEGYS
"Thank you, Jesus," Susie Wilson said. "I've been praying for this so hard." Wilson is suing over the state's ruling her son committed suicide in prison.

After years of high inmate death rates due to HIV/AIDS, suicide and poor medical care, federal civil rights regulators have launched an investigation of Delaware's prison medical system -- a process that could take years to complete and forever change the way the state treats its 6,800 inmates.

The investigation comes on the heels of a five-month preliminary inquiry by the Justice Department during which federal regulators interviewed many of the same medical experts, inmates and families of dead inmates who spoke to The News Journal late last year during the newspaper's six-month investigation of prison health care.

As with the newspaper's investigation, the Justice Department uncovered significant problems at the Delaware Department of Correction. The federal investigation now may involve FBI agents and grand juries with subpoena power.

> Special report
**Delaware's Deadly Prisons**



Buy this photo

THE NEWS JOURNAL/SUCHAT PEDERSON
Inmates at Young Correctional Institution pick up trash on Wednesday. State lawmakers aren't making changes, a former inmate's wife said.

Justice Department spokesman Eric Holland announced the probe Wednesday in Washington, but declined to comment further. Prior investigations under the federal Civil Rights of Institutionalized Persons Act have delved into all conditions of confinement and overall prison operations in other states.

"I am confident that the Special Litigation Section will conduct a thorough investigation," said U.S. Attorney for Delaware Colm F. Connolly. "Our office will be assisting them as needed."

Family members of inmates who have died behind bars in Delaware were jubilant.

"Thank you, Jesus. I've been praying for this so hard," said Susie Wilson, whose son, Jermaine Lamar Wilson, was found hanging in his cell with blood-stained clothes and a gash on his head. It was Feb. 18, 2005 -- the day his family says he was scheduled to be released after serving time for robbery.

**The office of U.S. Attorney Colm F. Connolly will assist federal investigators.**

Wilson's death is now the focus of a federal wrongful death lawsuit, which claims Jermaine Lamar Wilson was murdered while being held at the Delaware Correctional Center near Smyrna.

**Minner opposed investigation**

In October, when the preliminary federal inquiry was announced, Gov. Ruth Ann Minner had her legal counsel, Joseph C. Schoell, send a letter to U.S. Attorney General Alberto Gonzales calling The News Journal's series "misleading" and stressing how a full-blown investigation was unnecessary.

Correction Commissioner Stan Taylor wrote a five-page response to the newspaper's series, calling it inaccurate and "sloppy reporting."

On Wednesday, neither Minner nor Taylor returned calls or e-mails seeking comment about the federal investigation.

Both issued similar written statements downplaying the potential for cost and the erosion of local control inherent in the extensive federal probe. Improvements ordered by the Justice Department must be paid with state tax dollars.

"As my office informed the federal Justice Department last fall, we stand ready to cooperate with the federal government in any review of the Department of Correction's medical system," Minner wrote. "Up until this time, the Department of Justice has not requested information directly from the DOC, access to DOC facilities, or access to the DOC's medical provider or its accreditation agency and noted in a letter to us that it has not reached any conclusions about the subject matter of the investigation. We look forward to providing investigators with a complete and accurate account of the delivery of medical services in our prisons."

Taylor also stressed his willingness to cooperate -- even though federal regulators don't need Taylor's permission to conduct the investigation.

"The Delaware Department of Correction will cooperate fully with the federal investigation," Taylor wrote. "We will provide investigators with whatever information, access to facilities and access to personnel and inmates they may need. Because the Department of Justice has not yet requested any information from the DOC, we are eager to provide investigators with a comprehensive and factual look at the quality of health care delivered to the inmate population."

Delaware Attorney General Carl C. Danberg said his office is "facilitating communication between the DOJ in DC and the DOC." However, Danberg may be called upon for more if the Justice Department files a federal lawsuit against the state to remedy shortcomings in the system.





Christopher Barkes and his wife, Karen. Barkes hanged himself in Young Correctional Institution. Karen Barkes said the prison should have known he was suicidal since he disclosed previous suicide attempts and a history of mental illness.



Commissioner Stan Taylor called the newspaper's report inaccurate.



Delaware Attorney General Carl C. Danberg will defend the state.

*Exhibit D*
*06-151-KAJ*

Federal probe to address prison failures

"It's our legal obligation to defend the state," Danberg said. "We will cooperate fully to the extent that we can."

Danberg said the preliminary inquiry, though conducted appropriately, lacked balance.

"It is not supposed to be balanced. It is a one-sided look at the issue," he said. "The question before the DOJ is whether the allegations, if true, merit federal involvement. We'll cooperate fully. At this point, that's all that's appropriate to say."

**Problems exposed**

The federal investigation will be conducted by the Special Litigation Section of the Justice Department's Civil Rights Division. A News Journal special report on inmate health care published in September revealed sometimes gruesome details of neglect, such as an inmate's massive brain tumor -- largely ignored by staff -- which led to his death, and an outbreak of flesh-eating bacteria.

Other findings of the newspaper's six-month investigation were inmate death rates -- specifically AIDS-related and suicide -- far above the national norm.

During the newspaper's investigation, reporters discovered that Minner and Taylor awarded a $25.9 million no-bid contract for inmate health care to Correctional Medical Services -- a private medical contractor with a history of litigation over how the company provides medical care. Minner and Taylor also refused to release -- publicly or to lawmakers -- an audit of prison health care they say prompted the emergency hiring of CMS.

Minner castigated the newspaper's report, saying it contained "factual errors and misrepresentations." Still, she acknowledged some problems in the state's prisons and made several small changes, which included random case reviews and the appointment of a nurse to the prison administrative staff.

Dover attorney Stephen Hampton is one of a handful of lawyers willing to accept inmate cases. He's deluged by inmate letters pleading for help. One outcome of the Justice Department's investigation is the likely generation of additional inmate lawsuits and the settlement of outstanding medical claims against the Department of Correction due to the appearance of problems in need of federal intervention.

Hampton recently settled a lawsuit against the DOC and Correctional Medical Services, on behalf of the family of Anthony Pierce.

Pierce, known as "the brother with two heads," died of a tumor that ate through his brain while his condition was mishandled by the prison's medical staff.



*Exhibit D*

**Rep. Joseph G. Di Pinto questions the need for federal involvement.**

*06-151-KAJ*



**Sen. Charles L. Copeland helped found a community coalition.**



**Public Defender Larry Sullivan said investigators don't have an ax to grind.**



**Gov. Ruth Ann Minner said a full-blown investigation was not necessary.**

"I'm glad the feds are coming, but it's a disgrace to Delaware that they have to come," Hampton said. "Everyone involved knew that the health care system in our prisons was broken, and it has been so for years. The DOC, the attorney general and the governor's office were all told many times that despite all the millions of dollars they were paying to the private health providers, the inmates were not receiving basic medical care. And if something as horrifying and dramatic as the Anthony Pierce case didn't get them to do anything, it's obvious someone from the outside had to come in and do it."

### 'This health care issue has got to be solved'

In the months following the newspaper's series, some Delawareans have called for Taylor's resignation, an emergency takeover by special medical squads, a larger financial investment in the state's prison system, a review of the state's contract with Correctional Medical Services and mandatory HIV testing of inmates.

Others have blamed lawmakers for allowing conditions behind bars to get so bad.

"I think it's wonderful that the feds are coming," said Maryanne McGonogal, secretary of Common Cause of Delaware. "We are, however, disappointed in the governor's initial response. We believe if she'd been stronger and showed leadership, the federal government wouldn't have had to do this. We're hoping the Department of Justice digs into this deep, and uses the newspaper's articles to really clean up the prisons. This health care issue has got to be resolved, and we're fully supporting the Department of Justice's efforts."

The leader of a union representing the state's correctional officers also supports the investigation.

"From my personal standpoint, the union has no objection to a federal investigation of the Department of Correction. We had hoped to bring about reform through the bills we proposed to the General Assembly in January," said Wilbur Justice, president of the Correctional Officers Association of Delaware. "Many legislators who have been very concerned about the revelations in The News Journal articles last fall have been working with us."

The General Assembly has conducted several hearings on inmate care, and several lawmakers have introduced prison reform legislation, but the federal investigation was not universally welcomed.

"I firmly don't believe there's any need for this," said House Majority Whip Clifford G. "Biff" Lee, R-Laurel, a former chairman of the House Corrections Committee. "There were problems, but DOC has recognized them and they are on the way to making changes. I think they are doing the right things now."

**WHAT HAPPENED**

A massive federal investigation into Delaware's prison system was launched.

**WHAT'S NEXT?**

Attorneys from the Special Litigation Section, the arm of the Justice Department's Civil Rights Division responsible for enforcement in prisons, arrive accompanied by a team of corrections experts.

**WHAT WILL THE FEDS DO?**

The regulators will investigate conditions of care within the state's prisons, paying particular attention to inmate health care. The process can last for years, but will go faster if the state cooperates.

**WHAT CAN THE STATE DO?**

The state can agree to make changes, a process closely watched by a federal monitor, or the Justice Department can file suit against the State of Delaware and the Department of Correction.

Exhibit D
06-151-KAJ

Rep. Joseph G. Di Pinto, R-Wilmington West, questioned federal involvement.

"Maybe I should go down to Guantanamo and see if they're doing a good job," Di Pinto said, referring to the U.S. detention center for enemy combatants captured during the war in Afghanistan.

"I hope it is a thoughtful investigation," said Di Pinto, co-chairman of the budget-writing Joint Finance Committee. "We will certainly listen to what they have to say and will seriously look at the recommendations they make."

**Top to bottom investigation**

The federal investigation will examine all aspects of inmate care. It will be staffed by attorneys from the Special Litigation Section and correction experts. If the federal investigators discover problems with care, and if the state Department of Correction refuses to fix the deficiencies, Delaware could face a federal lawsuit by the Department of Justice.

The Special Litigation Section has never lost such a case.

When faced by the possibility of a Justice Department investigation, officials in other states have opted to work with the federal investigators and sign a formal consent decree, to keep the action out of court.

Former prison doctor Ramesh Vemulapalli, an AIDS specialist practicing in Dover, said the investigation is long overdue.

Vemulapalli said he quit working in Delaware prisons because he was not allowed to provide adequate care.

"I think the investigation will help make reforms in the prison system," Vemulapalli said. "It's a good thing. It will benefit the people of Delaware."

Delaware Public Defender Larry Sullivan said federal investigators will approach the prison system without prejudice. "These federal people have no ax to grind, and they have expertise and will get confirmation of one version of how well prisoners are treated."

Sen. James T. Vaughn Sr., D-Clayton, is a former state correction commissioner and current chairman of the Senate committees on Adult and Juvenile Corrections and the Judiciary. He questioned Taylor last month about medical staffing at the prison.

"When [corrections] came before this committee here, I wanted to make sure they had the people they were supposed to have," he said.

Vaughn said he'll reserve judgment until after the federal investigation.

**Community action**

In October, a coalition of clergy, elected officials, community leaders and families of inmates who have died in Delaware prisons marched to the governor's mansion in Dover and prayed for Minner to take steps to improve prison health care. Minner did not meet with the group, which included Sen. Charles L. Copeland, R-West Farms, one of the founders of the Delaware Coalition for Prison Reform and Justice.

If Minner had acted sooner, the federal government might not be involved today, Copeland said.

"It's a shame we let it get to that point," he added. "I called for an independent investigation, but I couldn't get anyone to agree to it. I was working on legislation, and we could have showed the feds we were doing something. I think the federal government has taken a legitimate step."

Many lawmakers say the state's prisons will be better because of the federal oversight.

"I can understand why the feds want to come in. So far, they've only heard one side of the story," said Rep. John C. Atkins, R-Millsboro, chairman of the House Corrections Committee. "I think they'll find things are not as bad as they've been led to believe. But I also think that, if they find problems, we'll get them fixed."

Senate President Pro Tem Thurman Adams Jr., D-Bridgeville, said fixing the system's problems is important not only to lawmakers, but to Taylor as well.

"If they want to come in, I'm sure it will be an open book as far as Stan's concerned. ... He is a dedicated man and he wants to have the best system he can," Adams said. "If they come in with good recommendations, I'm sure Stan will want to follow them up."

Legislation is pending in the General Assembly to require prompt notification of an inmate's family of a health emergency or death. House Majority Leader Wayne A. Smith, R-Brandywine Hundred North, has drafted -- but not yet introduced -- bills to create a health care inspector general position to oversee prison medical services, and switch to cost-plus contracts so vendors do not have an economic incentive to cut corners on care.

"We are looking at ways to make improvements through the budget process and will pass other legislation, if it is needed. ... There is a very high standard that has to be met for the federal government to come into the prisons and take over," Smith said. "I don't think we will meet that test. ... I am confident that we will cooperate with the investigation in any way possible."

Exhibit 1)
06-151-KAJ

Federal probe to address prison failures

Many inmates and their families say the legislative moves are insufficient.

"Delaware lawmakers aren't changing anything," said Karen Barkes, whose husband, Christopher, was sent to Young Correctional Institution, formerly Gander Hill, for a probation violation. Upon admission, he disclosed previous suicide attempts and a history of mental illness, according to the prison's screening form. Despite his admissions, prison staffers placed him in a cell, alone, according to the prison form. He hanged himself within hours.

"Chris clearly stated that he was suicidal and they put him in a cell by himself," she said. "There is definitely a problem."

Barkes filed a civil lawsuit last month, claiming the DOC and its medical providers' lack of training to recognize suicidal inmates and properly care for them allowed her husband to hang himself in his cell in November 2004.

Barkes' attorney, Jeffrey K. Martin, said it was "unfortunate that it had to get to this point, but it was absolutely necessary."

Martin has defended several inmates in federal court and complained about medical conditions in state prisons in 2004 to state and federal officials. Yet these problems continue.

"Our lawmakers are unwilling to acknowledge that the leadership within the prison system is woefully deficient, if it exists at all," Martin said. "It's my hope that the federal government will come in and look at our prison from top to bottom and make the appropriate recommendations for change."

*Contact investigative reporter Lee Williams at 324-2362 or lwilliams@delawareonline.com. Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

Exhibit I
06-151-KAT

Copyright © 2006, The News Journal. Use of this site signifies your agreement to the Terms of Service and Privacy Policy (updated 10/3/2005)